RENE L. VALLADARES
Federal Public Defender
State Bar No. 11479
KEISHA K. MATTHEWS
Assistant Federal Public Defender
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577/Phone
(702) 388-6261/Fax
Keisha_Matthews@fd.org

Attorney for Ari Shaquille Wilson

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00073-RFB-BNW |
| Plaintiff, | SENTENCING MEMORANDUM[1] |
| v. | |
| ARI SHAQUILLE WILSON, | |
| Defendant. | |

Ari Shaquille Wilson, through his counsel, Keisha K. Matthews, Assistant Federal Public Defender, submits this Sentencing Memorandum for consideration by the Court. Mr. Wilson reserves the right to supplement this filing with additional authorities or information, as the Court may permit, at or before the sentencing hearing scheduled on October 31, 2024, at 10:00 a.m.

---

[1] This sentencing memorandum is filed two days late with no objection from the government.

## I.   INTRODUCTION

Mr. Wilson was charged in a two-count indictment.[2]  On October 31, 2023, Mr. Wilson pled guilty pursuant to a plea agreement to count one, illegal acquisition of firearms in violation of 18 U.S.C. § 922(a)(6).[3] In the plea agreement, the parties stipulated to an adjusted offense level of 28.[4] The parties further agreed to a 3-level reduction for acceptance of responsibility.[5] Based on the reductions, and a criminal history category of I, the resulting guideline range is 57-71 months imprisonment. The government recommends a sentence of 57 months.[6] Mr. Wilson may request a downward variance pursuant to 18 U.S.C. §3553.[7] Mr. Wilson submits that a sentence of two years' probation is reasonable.

## II.   ARGUMENT

### A.   Background

#### 1.   "Want to make some money buying ammo?"

Mr. Wilson is a professional bowler and travels all over the country competing. He has been bowling professionally for over ten years and has numerous contacts in the business.[8] In early January 2023, Mr. Wilson received a Facebook call from a long-term associate in the bowling world.[9] While Mr. Wilson would not describe this person as his friend, he had known him for years and was friendly with him. They would often interact at bowling events. The two followed

---

[2] ECF No. 2.

[3] ECF No. 32.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] PSR ¶ 61.

[9] PSR ¶13.

each other on social media and frequently engaged in casual conversations that allowed them to keep up with each other's family and life events. Given their history, Mr. Wilson was not alarmed by the call or the subsequent proposition. In that call, the associate asked Mr. Wilson if he'd be interested in making some quick money buying ammunition.[10] The ammunition was for some "friends" of the associate who needed someone to make the purchase.[11] After a series of follow up messages on Facebook, Mr. Wilson agreed to buy the ammunition. His associate connected Mr. Wilson and individual 1 and the two arranged a meeting for the buy.[12]

### 2. The ammo was a ruse, it was really guns that they were after.

In the days following the call from his associate, Mr. Wilson met with individual 1 and a second man who accompanied him, individual 2. It was in that meeting that Mr. Wilson learned for the first time that he would not be buying ammunition, but he would be buying firearms, specifically AK rifles.[13] Both men were armed and per Mr. Wilson's associate, the men were "real gangsters" and "cartel types."[14] The men also knew where Mr. Wilson lived and that he lived with his then girlfriend. In that moment, Mr. Wilson did not believe he had any option other than to acquiescence to their instructions.

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] PSR ¶ 15 (citing the PSR as it relates to the individuals being real gangsters and cartel types).

3

### 3.    A Shifting Goal Post.

Individuals 1 and 2 initially said that they wanted Mr. Wilson to purchase 10 AK rifles and that would be enough. Between January 16, 2023, and January 19, 2023, Mr. Wilson purchased the 10 firearms.[15] However, that was not enough. They continued to ask him to buy more firearms. At this point, Mr. Wilson knew he was in over his head but was afraid of what could happen to him if he did not comply. He made four more firearm purchases between January 24 and 25, 2023 before he was apprehended by law enforcement.[16]

### 4.    Life and Death.

Mr. Wilson was indicted in this case on April 5, 2023. A mere nineteen days later, on April 24, 2023, his associate from the bowling community was found dead of a gunshot wound to the head and chest.[17] There is some uncertainty around the circumstances of his death. The death certificate describes the gunshot wounds as being self-inflicted and ruled it a suicide.[18] Friends and associates of the decedent have voiced suspicions of foul play. It is unclear if officers investigating his alleged suicide knew to consider other possible causes for his expiration.

**B.    A Sentence of Two Years' Probation is Sufficient but Not Greater than Necessary Considering the Factors in 18 U.S.C. § 3553(a).**

A sentence of two years' probation is a just and reasonable sentence considering the factors in 18 U.S.C. § 3553(a).

---

[15] ECF No. 34.

[16] *Id.*

[17] Exhibit A.

[18] *Id.*

### 1.   The nature and circumstances of the offense is nonviolent.

The nature and circumstances of this offense is non-violent. Mr. Wilson admittedly made false statements in purchasing firearms on various dates between January 16 and January 25, 2023. Mr. Wilson immediately took responsibility for his conduct and pled guilty pursuant to a plea agreement approximately 6-months after his arrest.

Mr. Wilson has a blemish free criminal history. In the past 30 years of his life, he has been nothing short of a model and productive citizen. Mr. Wilson takes full responsibility for his conduct. He understands that whether he was buying ammunition or firearms under the circumstances in this case, he was engaged in unlawful behavior. In the 18 months since his indictment, Mr. Wilson has not had any criminal contact.

The nonviolent nature of the offense, Mr. Wilson's immediate acceptance of responsibility, and his law-abiding behavior while on pre-trial release support a probationary sentence.

### 2.   Mr. Wilson's history and characteristics support a probationary sentence.

Mr. Wilson grew up in the Chicago area.[19] He was primarily raised by his mother, grandmother and stepfather.[20] He does not have a relationship with his biological father, and only recalls meeting him once when he was a teenager.[21] Growing up, Mr. Wilson's male role models were his uncles, stepfather, and especially his grandfather. He had a very close and loving relationship with his

---

[19] PSR ¶ 41 and 42.
[20] *Id.*
[21] PSR ¶ 41.

grandfather.[22] Mr. Wilson was 16 years old when his grandfather passed away and he recalls his passing as being a deeply traumatic experience for him.[23] Mr. Wilson credits his strong family support system with helping him navigate that loss.[24] He has been fortunate to rely on that same familial support network to navigate the challenges and weight of this case.[25]

Mr. Wilson was an active child. His mother kept him involved in extra-curricular activities. Ms. Wilson describes her son as being "an exceptional person, who is good and honest and never gave her any trouble growing up."[26] As a youth, Mr. Wilson participated in baseball, football, karate, Tae Kwon Do, jujitsu, and bowling.[27] Early on, it was clear that bowling was a sport that he would excel in. Throughout his youth and teenage years, he participated in bowling leagues and tournaments and was a consistent standout. In 2014, Mr. Wilson decided to transition into professional bowling.[28]

Approximately seven years ago, Mr. Wilson moved to Las Vegas to further pursue his bowling aspirations. He has won numerous tournaments and is a respected bowler in the community. This career path has not only put him in a position to support himself doing something he loves but has also afforded him the financial means to help support his disabled mother.[29] After the resolution of

---

[22] PSR ¶ 43.
[23] *Id.*
[24] *Id.*
[25] PSR ¶ 42.
[26] PSR ¶ 49.
[27] PSR ¶ 44.
[28] PSR ¶ 61.
[29] PSR ¶ 47 and 41.

6

this case, Mr. Wilson aspires to continue to grow in his profession as a professional bowler, compete on the Professional Bowlers Association tour, coach youth in two-handed bowling, return to school to complete his degree, and maintain his sobriety.[30]

While on pre-trial release, Mr. Wilson successfully completed substance abuse treatment at the Community Counseling Center.[31] He continues to strive to maintain his sobriety in the community. After a recent positive test, he has reengaged with drug treatment. Mr. Wilson is interested in receiving drug treatment as a condition of his probation.

This case is Mr. Wilson's first felony charge and conviction. He has taken this matter very seriously. Aside from a couple of hiccups in his pretrial supervision related to his addiction challenges, Mr. Wilson has been compliant with his terms of supervision. He has maintained employment and regular communication with his supervising officer.

Mr. Wilson has a strong support system. His mother, stepfather and close family and friends are with him on this journey and are doing everything they can to support him. A probationary sentence is appropriate considering Mr. Wilson's history and characteristics.

### 3. A downward variance is appropriate in this case to avoid sentencing disparities.

A downward variance to allow for a sentence of probation would be consistent with the types of sentences other similarly positioned defendants have received in this district.

---

[30] PSR ¶ 47.

[31] PSR ¶ 56.

| *United States v. Chandra Bridges,* 2:21-cr-00041-ART-BNW (D. Nev., Jan. 2023) | Convicted of illegal acquisition of firearms. The case involved 3-7 firearms however the plea agreement did include any enhancements for the number of firearms. Ms. Bridges was sentenced to CFTS and 1-year of supervised release. |
| --- | --- |
| *United States v. Jorden Redard,* 2:21-cr-00173-ART-DJA (D. Nev., Feb. 2023) | Convicted of engaging in the business of dealing firearms without a license. The case involved 200+ firearms. Mr. Redard was sentenced to 4 years of probation. |
| *United States v. Ayele Jah'ne Holmes,* 2:220cr-00079-APG-EYJ (D. Nev., Jul. 2023) | Convicted of illegal acquisition of firearms. The case involved 8-24 firearms. Ms. Holmes was sentenced to 3 years of probation. |

**4.    A lengthy sentence is not necessary in this case to achieve the goals of 18 U.S.C. § 3553(a).**

In some cases, a term of incarceration can have an inverse effect on the goals of sentencing. *See Gall v. United States*, 552 U.S. 38, 54 (2007) ("[T]he unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, 'a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.'").

The United States Sentencing Commission studied recidivism shortly after the enactment of the Sentencing Reform Act of 1984 (SRA).[32] They found that recidivism information is central to three primary purposes of punishment.[33] These three purposes (specific deterrence, incapacitation, and rehabilitation) focus on the prevention of future crimes through correctional intervention.[34]

One area specifically covered in the study dealt with recidivism and the sentences imposed. Offenders with shorter lengths of imprisonment had lower recidivism rates.[35] The highest recidivism rates were found among offenders with longer sentences.[36]

The National Institute of Justice also lists various things to consider about deterrence:

1. Sending an offender to prison isn't a very effective way to deter crime. Prisons are good for punishing criminals and keeping them off the street, but prison sentences are unlikely to deter future crimes. Prisons may have the opposite effect. Inmates learn more effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future imprisonment.[37]

---

[32] Recidivism Among Federal Offenders: A Comprehensive Overview, United States Sentencing Commission (March 2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Five Things About Deterrence,* U.S. Department of Justice, Office of Justice Programs (May 2016), https://www.ojp.gov/pdffiles1/nij/247350.pdf.

9

2.  Increasing the severity of punishment does little to deter crime.  Laws and policies designed to deter crime are ineffective partly because offenders know little about the sanctions for specific crimes.[38]

3.  The certainty of being caught is a more powerful deterrent than punishment.  Research shows that if offenders think there's only a slim chance they will get caught, the severity of punishment is an ineffective deterrent to crime.[39]

Long periods of incarceration are not meaningful deterrents. Mr. Wilson is not a violent person. This is evidenced by his lack of a criminal history and performance while on pretrial release over the past eighteen months. Incarcerating him now, would erode the progress that he has made in his sobriety, strain his relationship with his family, and derail his career pursuits.

A sentence of two years' probation would allow the U.S. Probation Office to closely monitor Mr. Wilson to ensure that he complies with his conditions of probation and does not break the law. Should Mr. Wilson violate a condition of probation, even if said violation occurs at the end of his probation term, this Court could sentence him to a term of incarceration and supervised release.

## III.   CONCLUSION

Mr. Wilson knows that the underlying offense is serious, and he is remorseful for his conduct.  He has taken full responsibility by pleading guilty and wants nothing more than to move forward from this chapter in his life. This Court should vary downward and impose a sentence of two years' probation

---

[38] *Id.*

[39] *Id.*

10

based on the nature and circumstances surrounding this case, Mr. Wilson's personal narrative, strong familial support, and the purposes of 18 U.S.C.§ 3553(a) in determining an equitable sentence that is sufficient, but not greater than necessary.

DATED this October 26, 2024.

Respectfully submitted,

RENE L. VALLADARES
Federal Public Defender

By:                            */s/ Keisha K. Matthews*

KEISHA K. MATTHEWS
Assistant Federal Public Defender
Attorney for Ari Shaquille Wilson

11

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on October 26, 2024, she served an electronic copy of the above and foregoing **SENTENCING MEMORANDUM** by electronic service (ECF) to the person named below:

JASON M. FRIERSON
United States Attorney
Robert Knief
Assistant United States Attorneys
400 South Virginia Street, Suite 900
Reno, NV 89501

*/s/ Celina Moore*

Employee of the Federal Public
Defender

12